IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL J. MARTINEZ,

    Petitioner,

vs.                                                       1:15-cv-00315-RB-LF

JOHN SANCHEZ, Warden,

    Respondent.

**PROPOSED FINDINGS OF FACT
AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Daniel Martinez's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. The Honorable Robert C. Brack referred this case to me to recommend to the Court an ultimate disposition of the case. Doc. 15. Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Martinez's petition.

**I.    Background Facts and Procedural Posture**

In 2011, Martinez pled guilty to attempted kidnapping, a second degree felony. Doc. 10-1 at 1 (Exh. A), 5 (Exh. B).[1] The state court sentenced Martinez to a total of ten years imprisonment (nine years for the attempted kidnapping and one year as a habitual offender) and suspended all but one year, followed by five years of supervised probation. Doc. 10-1 at 2 (Exh. A). As a term of his probation, the court required Martinez to obey all municipal, county, state, and federal laws. *Id*.

During the probationary period, Martinez was charged with breaking and entering and aggravated battery on a household member. Doc. 12 at 9. The state court held a probation

---

[1] Citations to exhibits refer to the exhibits submitted by respondent John Sanchez in his answer to Martinez's petition (Doc. 10).

revocation hearing and found that Martinez violated the terms and conditions of his probation by committing the offense of battery on a household member. Doc. 10-1 at 13 (Exh. C), 59 (Exh. N). Consequently, the state court revoked Martinez's probation and ordered him to serve the remainder of his nine-year sentence. Doc. 10-1 at 16–17 (Exh. D), 59–60 (Exh. N); Doc. 10-2 at 51 (Exh. W). Notably, the state court did not find that Martinez had forced his way into the residence and did not base the revocation on the charge of breaking and entering. *Id*.

At the revocation hearing, the state called the investigating officer who, over a hearsay objection, testified about statements made by Lesley Koury, Martinez's wife,[2] and her daughter, as well as a written statement made by Ms. Koury at the time of the event. Doc. 10-2 at 2 (Exh. P). The officer often referred to the information in his police report during his testimony. Doc. 10-2 at 40 (Exh. R). Ms. Koury told the officer that Martinez entered her residence through the window, yelled at her, and pushed her into the wall, causing injuries to her shoulder. Doc. 10-1 at 49, 54, 55, 57 (Exh. M); Doc. 10-2 at 12–13 (Exh. R). The officer also interviewed Ms. Koury's nine-year-old daughter who was present during the altercation. Her description of the events was consistent with Ms. Koury's. Doc. 10-1 at 54–55 (Exh. M); Doc. 10-2 at 13, 15 (Exh. R). At the hearing, however, Ms. Koury recanted her allegations and testified that she fell against a door. Doc. 10-2 at 10, 16 (Exh. R). The state court found Ms. Koury's live testimony unreliable and instead relied on the officer's testimony and photographic evidence to find that Martinez committed a battery on a household member in violation of the terms of his probation. Doc. 10-1 at 59 (Exh. N); Doc. 10-2 at 10 (Exh. R).

---

[2] Lesley Koury is described by the investigating officer as Martinez's ex-girlfriend. Doc. 10-1 at 49, 54, 57 (Exh M). However, in the state court filings, Martinez's attorneys refer to Ms. Koury as his wife. Doc. 10-2 at 2 (Exh P.), 10, 16 (Exh. R).

Martinez appealed the probation-revocation order, arguing that the court erred by basing the revocation on hearsay testimony. Doc. 10-2 at 1–3 (Exh. P). He later sought to amend his docketing statement to include a claim that his counsel was ineffective for failing to call a witness or present evidence that would have corroborated Martinez's defense. Doc. 10-2 at 8–29 (Exh. R). The New Mexico Court of Appeals affirmed the decision of the lower court. It noted that under New Mexico law, hearsay evidence may be used in a probation revocation hearing if it has probative value, and it found "ample support for the district court's determination that [Martinez] willfully violated his probation." Doc. 10-2 at 32 (Exh. S). The court also denied Martinez's motion to amend for lack of support in the record. Doc. 10-2 at 31–32 (Exh. S). Martinez filed a petition for writ of certiorari on these same two issues to the New Mexico Supreme Court, Doc. 10-2 at 35–50 (Exh T), which the court denied, Doc. 10-2 at 49 (Exh. U). Finding no relief in the state courts, Martinez filed his petition for a writ of habeas corpus in this Court.

## II.     Martinez's Claims

As in his prior appeals in the state courts, Martinez contends that the state court erred by relying on hearsay testimony as the basis for revoking his probation. Doc. 5 at 5. Martinez additionally contends that his attorney was ineffective for failing to submit evidence from the landlord in support of his defense. *Id.* Finally, Martinez requests an evidentiary hearing "based on prima facie evidence of civil rights violations." Doc. 5 at 15. Martinez's claims are without merit, and the Court should dismiss his petition.

## III.    Legal Standards

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas

corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In this two-step inquiry, the threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405. The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id*. Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

4

result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id*. at 76.

Pursuant to AEDPA, state court findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-el v. Dretke*, 545 U.S. 231, 240 (2005).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) (citing § 2254(d)(1)). Evidentiary hearings are not permitted in federal court on claims that a state court decided on their merits. *Id.* at 181–83; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim

advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted), *overruled on other grounds as recognized in Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). Thus, summary decisions—even those completely devoid of any reasoning at all—can constitute decisions "on the merits" for purposes of AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The standard is "highly deferential" to state courts and "difficult to meet," as it demands that state-court decisions be given the benefit of the doubt. *Pinholster*, 563 U.S. at 181 (citing *Richter*, 562 U.S. at 101); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

For federal habeas claims not adjudicated on the merits in state courts, the Court must review the claim *de novo*, and the deferential standards of § 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

Section 2254(e)(2) controls whether a state habeas petitioner may receive an evidentiary hearing:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e).  In other words, where a petitioner has failed to develop the record, the court may not hold an evidentiary hearing unless the requirements of § 2254(e)(2)(A) and (B) have been met.  *Williams*, 529 U.S. at 430.

## IV. Discussion

### A. Probation Violation Based on Hearsay

Martinez contends that the state court abused its discretion by revoking his probation "on assertions not supported by the record and upon patently unreliable and disavowed hearsay information which was insufficient to establish a violation."  Doc. 6 at 4.  Because the state courts decided this claim on the merits, an evidentiary hearing is not permitted, and the Court will only review the record as it stood before the state courts.

It has long been established that a court may rely on hearsay in determining whether to revoke probation.  In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court held that to satisfy due process, a parolee must be afforded a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions," and that "the parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."  *Id*. at 485, 488.  However, the revocation hearing does not equate to a full-blown criminal prosecution, but "is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."

*Id*. at 489.  "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id*. at 480.  This is because revocation does not deprive an individual of the absolute liberty enjoyed by every citizen.  Instead, revocation deprives the parolee only of "the conditional liberty properly dependent on observance of special parole restrictions." *Id.*

Similarly, New Mexico courts have held that a probation revocation proceeding is analogous to an administrative hearing and not part of a criminal prosecution.  *See State v. DeBorde*, 1996-NMCA-042, ¶ 8, 121 N.M. 601,603, 915 P.2d 906, 908.  A probation revocation hearing determines "whether, during the probationary or parole period, the defendant has conformed to or breached the course of conduct outlined in the probation or parole order." *State v. Foster*, 1998-NMCA-147, ¶ 8, 125 N.M. 830, 831, 965 P.2d 949, 950 (internal citation and quotations omitted).  The degree of proof required to establish a probation violation is:

> such reasonable certainty as to satisfy the conscience of the court of the truth of the violation.  It does not have to be established beyond a reasonable doubt.  In such a hearing if the evidence inclines a reasonable and impartial mind to the belief that the defendant had violated the terms of his probation, it is sufficient.  A hearing of this character is not a trial on a criminal charge, but is a hearing to judicially determine whether the conduct of the defendant during the probation period has conformed to the course outlined in the order of probation.

*State v. Brusenhan,* 1968-NMCA-006, ¶ 9, 78 N.M. 764, 766, 438 P.2d 174, 176 (internal citation omitted).  Moreover, probation revocation proceedings are not directed at punishing the original criminal activity, but rather to "reassess whether the petitioner may still be considered a good risk." *In re Lucio F.T.*, 1994-NMCA-144, ¶ 5, 119 N.M. 76, 77, 888 P.2d 958, 959.  Accordingly, in New Mexico, "hearsay evidence may be used in probation revocation hearings if it has probative value." *State v. Neal*, 2007-NMCA-086, ¶ 42, 142 N.M. 487, 496, 167 P.3d 935, 944 (citing *State v. Vigil*, 1982-NMCA-058, ¶ 19, 97 N.M. 749, 751, 643 P.2d 618, 621).

Evidence has probative value if it "proves" or "tends to prove" the proposition asserted. *See Vigil*, 1982-NMCA-058, ¶ 23, 97 N.M. at 753, 643 P.2d at 622.

In this case, the state court rejected Ms. Koury's live testimony and instead found that the officer's testimony, Ms. Koury's previous statements, and photographic evidence of Ms. Koury's injuries tended to prove that Martinez had committed battery on a household member. Doc. 10-2 at 32 (Exh. S). Affirming the state district court's decision, the New Mexico Court of Appeals determined that the evidence was "sufficient to support the district court's discretionary election to revoke [Martinez's] probation." *Id.* at 32–33.

Because the state court's reliance on hearsay and other evidence falls squarely within Supreme Court precedent, Martinez cannot establish that the state court's decision to revoke his probation was contrary to, or involved an unreasonable application of, clearly established federal law.

    B.  <u>Ineffective Assistance for Failing to Present Evidence</u>

As the state courts did not reach the merits of Martinez's ineffective assistance claim, the Court will review the claim *de novo*. The Sixth Amendment provides for the right to the assistance of counsel "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "[T]he right to counsel is the right to the effective assistance of counsel." *Id.* at 686 (citation and quotations omitted). "To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must show: (1) 'counsel's performance was deficient' and (2) 'the deficient performance prejudiced the defense.'" *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

To establish deficient performance, the petitioner must prove that the attorney's "representation fell below an objective standard of reasonableness" such that "counsel's errors

were so serious as to deprive the defendant of a fair trial." *Williams*, 529 U.S. at 390–91 (quoting *Strickland*, 466 U.S. at 687, 688). The court must give "considerable deference to an attorney's strategic decisions" and "'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690). However, "[t]he court need not address whether counsel's performance was deficient if defendant fails to prove actual prejudice. Prejudice is shown if defendant establishes a reasonable probability that the outcome of the trial, sentencing, or appeal would have been different had counsel raised the omitted claim or argument." *United States v. Hill*, No. CR-05-111-L, 2009 WL 1531533, *3 (W.D. Okla. June 1, 2009) (citing *Neil v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001)).

    Here, Martinez contends that his attorney was ineffective for failing to present evidence from the landlord that he had permission to enter the property. Doc. 6 at 8. Martinez asserts that either affidavits or testimony from his landlord was material to the breaking-and-entering charge and would undermine the investigating officer's testimony. *Id.* at 9. In support of these arguments, Martinez submits a letter from his landlord that says that the landlord gave Martinez permission to enter the property, and that he (the landlord) observed bruises on Ms. Koury[3] three days before her encounter with Martinez. Doc. 12 at 6. The landlord indicated that when he saw Ms. Koury, he "asked her what had happened and she answered me and told me she had fell." *Id.* Martinez cannot establish a reasonable probability that the outcome of his revocation proceeding would have been different had his attorney presented this evidence.

---

[3] In the letter, the landlord refers to "Tia Kolen." While there is no other reference to a "Tia Kolen" in the record, given the context of the letter submitted by Martinez, the Court presumes that the landlord is referring to Lesley Koury.

First, the state court did not revoke Martinez's probation based on the breaking-and-entering charge. As respondent correctly points out,

> [T]he state district court was clear that it found the breaking-and-entering charge to be "a little iffy" and therefore had decided to "hang [its] hat on the domestic violence." [Doc. 10-2 at 10 (Exh. R)]. Accordingly, the sole basis for the court's probation revocation was its finding that Mr. Martinez had committed the offense of battery upon a household member. [*See* Doc. 10-1 at 59 (Exh. N)].

Doc. 10 at 12; *see also* Doc. 10-2 at 18–19 (Exh. R).

Second, the landlord's statement—that "Tia Kolen" had bruises three days before Martinez went to the property and that she told him she fell, Doc. 12 at 6—are not inconsistent with Ms. Koury and Martinez's own testimony as well as the officer's observations immediately following the incident. In recanting her original story to the police, Ms. Koury testified that during the altercation with Martinez, she tried to pull a stereo away from Martinez and fell back against the door. Doc. 10-2 at 16 (Exh. R). Martinez testified that Ms. Koury "must have hurt her shoulder when she tried to grab stuff away from him and fell backwards." *Id.* at 17. The officer who responded to the incident "initially saw redness and a scrape on [Ms. Koury's] right shoulder, but as time passed while [he] was at the residence, the injury site started to swell and bruising became visible." Doc. 10-1 at 55 (Exh. M). Additionally, the officer observed a large bruise on the inside of Ms. Koury's arm that she said was from a previous unreported domestic altercation with Martinez. Doc. 10-1 at 55 (Exh. M). Martinez specifically acknowledged that "the landlord was not a direct witness to the domestic violence allegations." Doc. 10-2 at 24 (Exh. R). Because Ms. Koury, Martinez, and the officer all testified that Ms. Koury had a fresh injury to her shoulder on the day the police were called, bruises observed by the landlord three days before the incident—whether from a fall or a prior domestic altercation—does not

undermine the state district court's finding that Martinez committed battery on a household member on the day in question.

Because the state court's decision to revoke Martinez' probation was not based on the breaking-and-entering charge, and the landlord's observation of prior bruising did not undermine the battery-on-a-household-member charge, neither the landlord's testimony (assuming it would have been consistent with his letter), nor submission of the letter would have changed the outcome of the revocation proceeding. Martinez was not prejudiced by his attorney's failure to introduce this evidence at the hearing. Consequently, Martinez's ineffective assistance claim must fail.

### C. Evidentiary Hearing

The first inquiry under 28 U.S.C. § 2254(e)(2) is whether Martinez has "'failed to develop the factual basis of a claim in State court.'" *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998) (quoting 28 U.S.C. § 2254(e)(2)); *see also Williams*, 529 U.S. at 431. If he has, the Court must deny a hearing unless he establishes that one of the two exceptions set forth in § 2254(e)(2) applies. There is no reason apparent from the record that explains why Martinez could not have presented the landlord's letter or an affidavit to the New Mexico Court of Appeals. However, the respondent does not challenge Martinez's failure to develop the record as grounds for denying an evidentiary hearing. Accordingly, the Court will presume, without deciding, that Martinez was diligent in his efforts to develop the record.

Nonetheless, Martinez is only entitled to an evidentiary hearing "so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller*, 161 F.3d at 1253 (citation omitted). As discussed above, Martinez cannot

show that he suffered any prejudice as a result of his counsel's alleged shortcomings.  He therefore is not entitled to an evidentiary hearing on this issue.

## V.     Recommendation

Martinez cannot establish that the state court erred by relying on hearsay testimony.  Nor can he show that his attorney's failure to introduce evidence at his revocation hearing prejudiced him.  I therefore recommend that the Court deny Martinez's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) along with his request for an evidentiary hearing, and dismiss this case with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge